UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

                              Plaintiff,

v.

BFS GROUP LLC,

                              Defendant.

Case No. 1:23-cv-10573

COMPLAINT

**INTRODUCTION**

1.      Without applying for or receiving a federal industrial stormwater discharge permit, BFS Group LLC, operating under the name Reliable Truss, ("Reliable Truss" or the "Company") has been unlawfully discharging industrial stormwater from its wood product manufacturing facility at 129 and 200 Welby Road, New Bedford, Massachusetts (the "Facility"). Pollutants from the Facility are picked up in stormwater and discharged into an adjacent creek and wetlands that drain to the Acushnet Cedar Swamp State Reservation (the "Reservation Wetlands"). The Reservation Wetlands flow to the Paskamanset River, a tributary of the Slocum River.

2.      Industrial stormwater from wood product manufacturing facilities likely contains organic matter and solids that pose a threat to water quality, wetlands, and aquatic ecosystems.

3.      Reliable Truss's violations occur within an area that has been designated by the Commonwealth as an "Environmental Justice" population. Residents of such communities have the potential to be disproportionately impacted by environmental harms and risks.

4.      Reliable Truss is not properly monitoring or controlling its stormwater discharges as is required by the federal Clean Water Act. 33 U.S.C. §§1251–1387 (the "Clean Water Act" or the "Act").

5.      The Commonwealth of Massachusetts (the "Commonwealth") brings this civil suit to enforce the requirements of the federal Clean Water Act, 33 U.S.C. §§1251–1387 (the "Clean Water Act" or "the Act"). The Commonwealth seeks injunctive relief, civil penalties, and other relief the Court deems appropriate to redress Reliable Truss's illegal discharges of industrial stormwater to adjacent wetlands and waterways.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

7.      On August 20, 2022, the Commonwealth provided notice of Reliable Truss's violations of the Clean Water Act, and of its intention to file suit against Reliable Truss (the "Notice Letter"), to the Administrator of EPA; the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection; and to Reliable Truss, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

8.      More than sixty days have passed since notice was served.

9.      This action is not barred by any prior state or federal enforcement action addressing the violations alleged in this Complaint.

10.     The Commonwealth has an interest in protecting for its residents the integrity of Massachusetts waters, and the related health, safety, economic, recreational, aesthetic, and environmental benefits those waters provide. The interests of the Commonwealth have been, are

being, and will continue to be adversely affected by Reliable Truss's failure to comply with the Clean Water Act, as alleged in this Complaint. The requested relief will redress the harms to the Commonwealth caused by Reliable Truss's activities. Reliable Truss's continuing acts and omissions, as alleged in this Complaint, will irreparably harm the Commonwealth, for which harm it has no plain, speedy, or adequate remedy at law.

11.    Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

12.    Plaintiff is the Commonwealth, appearing by and through the Attorney General.

13.    The Attorney General is the chief law officer of the Commonwealth, with offices at One Ashburton Place, Boston, Massachusetts. She is authorized to bring this action and to seek the requested relief under G.L. c. 12, §§ 3 and 11D.

14.    Defendant BFS Group LLC, Inc. is a Delaware limited liability company that lists its principal address as 2001 Bryan Street, Suite 1600, Dallas, Texas, 75201.

## STATUTORY BACKGROUND
### Federal Clean Water Act Requirements

15.    The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by EPA under the National Pollutant Discharge Elimination System ("NPDES"). *See* Sections 301(a), 402(a) and 402(p) of the Act, 33 U.S.C. §§ 1311(a), 1342(a), 1342(p). Polluted stormwater is the leading cause of water quality impairment in Massachusetts. During every rain or snowmelt event, runoff flows over the land surface, picking

up potential pollutants such as sediment, organic matter, nutrients, metals, and petroleum by-products. Polluted stormwater runoff can be harmful to plants, animals, and people.

*General Industrial Stormwater Permit*

16.     To minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit") under the NPDES program. *See* 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015), 86 Fed. Reg. 10269 (Feb. 19, 2021).[1]

17.     Companies that manufacture wood products, and that discharge industrial stormwater to waters of the United States directly or through separate storm sewer systems, are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D (Sector A).

18.     The Stormwater Permit requires the Facility to, among other things:

  a.     prepare a stormwater pollution prevention plan ("SWPPP"), Stormwater Permit, Sections 6 and 8.A.4 (pgs. 55-59, 71-72);

  b.     submit to EPA a Notice of Intent ("NOI") to be covered by the Stormwater Permit, Stormwater Permit, Section 1.3 (pgs. 12-13) and Appendix G;

  c.     select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges, Stormwater Permit, Sections 2, 8.A.3, and 8.A.4 (pgs. 17-26, 71-72);

  d.     collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility,

---

[1] With exceptions not relevant here, the 2021 version of the Stormwater Permit contains the same provisions as the 2015 version of the Stormwater Permit, although the section and page numberings are occasionally different. For ease of reference, this Complaint cites to the 2021 Stormwater Permit revision.

including, among other things, quarterly benchmark monitoring for chemical oxygen demand ("COD"), and total suspended solids ("TSS"), Stormwater Permit, Sections 4.0, 8.A.6, and 8.A.7 (pgs. 31-45, 72-74);

e.    conduct and document routine Facility inspections and quarterly visual assessments to, among other things, sample and assess the quality of the Facility's stormwater discharges, ensure that stormwater control measures required by the permit are functioning and are adequate to minimize pollutant discharge, Stormwater Permit, Sections 3.0 and 8.A.5 (pgs. 27-31, 72);

f.    conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive stormwater pollution whenever required by the permit, Stormwater Permit, Section 5 (pgs. 45-55); and

g.    timely prepare and submit to EPA all required documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, Section 7 (pgs. 64-70).

*Citizen Suit Provision of the Federal Clean Water Act*

19.    Section 505(a)(1) of the Act authorizes citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 1362(5).

20.     The Commonwealth is a "citizen" within the meaning of Section 505(g) of the Act, because it is a "person" having an interest which is or may be adversely affected by industrial stormwater pollution discharges. *See* 33 U.S.C. § 1365(g).

21.     Under Section 505 of the Act, this Court has authority to enjoin Reliable Truss's violations of the Act's prohibition on unauthorized discharges of pollutants and to require the Company to comply with its Stormwater Permit. The Court also has authority to impose penalties of up to $64,618 per day for each of the Company's prior violations. *See* 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. §§ 19.4; 88 Fed. Reg. 989 (Jan. 6, 2023).

## STATEMENT OF FACTS

### Description of the Reliable Truss Facility and Activities

22.     Reliable Truss manufactures prefabricated wood products such as trusses, gazebos, and floor and wall panels at the Facility.

23.     The Company stores wood, sawdust, final products, and waste materials ("Industrial Materials") outside at the Facility.

24.     The Facility is surrounded to the south, west, and north by a creek that flows to the Reservation Wetlands ("Tributary Creek"). The east side of the Facility is bounded by a wetland that flows to the Reservation Wetlands ("Tributary Wetlands"). The Reservation Wetlands drain to the Paskamanset River, a tributary of the Slocum River.

25.     The Reservation Wetlands are located in the Acushnet Cedar Swamp State Reservation, which was designated as a "National Natural Landmark" by the National Parks Service in 1972 and is only one of eleven Natural Landmarks in Massachusetts. The following aerial photo, taken from the Massachusetts Department of Environmental Protection's

Wetland Change Map, has been annotated by the Attorney General's Office to show the location of

the Facility in proximity to the Acushnet Cedar Swamp State Reservation.



26.     The Commonwealth has designated the Acushnet Cedar Swamp as "State

Reserve" and "Core Habitat" essential to ensuring the long-term persistence of species of

conservation concern. Table 1 identifies the species of conservation concern found in the

Acushnet Cedar Swamp.

**Table 1: The Species of Conservation Concern in the Acushnet Cedar Swamp**

| Taxon | Common Name | Scientific Name | Status |
|---|---|---|---|
| Crustaceans | American Clam Shrimp | *Limnadia lenticularis* | Special Concern |
| Crustaceans | Coastal Swamp Amphipod | *Synurella chamberlaini* | Special Concern |
| Butterflies and Moths | Pale Green Pinion | *Lithophane viridipallens* | Special Concern |
| Damselflies | Attenuated Bluet | *Enallagma daeckii* | Threatened |
| Damselflies | Scarlet Bluet | *Enallagma pictum* | Threatened |
| Amphibian | Four-toed Salamander | *Hemidactylium scutatum* | Special Concern |

27.     Reliable Truss conducts some of its processing outdoors, stockpiles Industrial Materials uncovered outside, and drops Industrial Materials on the ground. The following picture from Google Earth has been annotated by the Attorney General's Office to depict examples of outdoor activities, uncovered Industrial Materials exposed to precipitation, and Industrial Materials on the ground surface of the Facility.



### Defendant's Discharge of Pollutants from the Facility

*Polluted Industrial Stormwater Discharges into Adjacent Wetlands and Waterways*

28.     During every rain or snowmelt event, runoff flows over Industrial Materials and the ground surface at the Facility.

29.     Runoff picks up pollutants from the Industrial Materials and discharges into the Tributary Creek and Tributary Wetlands directly to the west, north, and east of the Facility, and also via catch basins located on Welby Road.

30.     The following aerial photo taken from Google Earth and annotated by the Attorney General's Office, depicts the location of catch basins at the facility, the general

direction of stormwater flow into catch basins, and general direction of stormwater flow off the

Facility and into the Reservation Wetlands via the Tributary Creek and Tributary Wetlands.



31.     The following October 2019 photo taken from Google Earth and annotated by

the Attorney General's Office, depicts the location of catch basins on Welby Road with red

circles and shows the direction of stormwater flow from the Facility with red arrows.



32.     For at least five years, during the rain events listed on Attachment A, Defendant has discharged industrial stormwater from the Facility into the Tributary Creek and Tributary Wetlands.

33.     For at least five years, during the rain events listed on Attachment A, Defendant has discharged industrial stormwater from the Facility into catch basins on Welby Street that flow to the Tributary Wetlands and Tributary Creek.

*Potential Impacts from Pollutants in Reliable Truss Stormwater Discharges*

34.     Reliable Truss's stormwater discharges likely contain pollutants including COD and TSS.

35.     COD is a measurement of organic matter in water. Excessive discharges of organic matter pose a risk of harm to water quality and aquatic life. When high levels of organic matter are discharged to a waterbody, the presence of bacteria, fungi, and other decomposer organisms increases. The presence of decomposer organisms and the decomposition process lowers the available oxygen in the water, impairing and potentially asphyxiating aquatic organisms.

36.     TSS is an indicator parameter that measures the presence of solids, or sediment, suspended in a water sample. Solids in discharges from the Facility are likely to include wood particles, sawdust, debris, and sediment. Even uncontaminated sediment destroys habitat, harms aquatic organisms, and can contribute to flooding. Sediment settles to the bottom of a river where it disrupts and smothers bottom-feeding organisms. Sediment becomes suspended in water, where it harms and kills fish by clogging their gills, making it harder for them to breathe. Excessive sedimentation harms the entire food chain by destroying habitat and killing the smaller organisms on which larger ones depend. For example, sediment in the water column increases

turbidity, reducing light penetration, decreasing the ability of plant communities to photosynthesize, preventing animals from seeing food, and reducing fish populations. Sediment poses particular risks to wetlands. Wetlands play an integral role in the ecology and hydrology of the watershed. The combination of shallow water, high levels of nutrients, and high primary productivity is ideal for the growth of organisms that form the base of the food web and feed many species of fish, amphibians, shellfish, and insects. TSS can harm wetlands by, among other ways, suffocating the native species and allowing noxious and invasive species to come in and dominate the area. Sedimentation can also decrease wetland volume, decrease the duration that wetlands retain water, and change plant community structure. This can severely harm vegetation, soils, and downstream water quality and significantly increase the risk of flooding.

**Reliable Truss's Failure to Comply with the Requirements of the Stormwater Permit**

37.    Reliable Truss has not submitted any Notice of Intent to be covered by the Stormwater Permit.

38.    Reliable Truss has not complied with the terms of the Stormwater Permit.[2] In particular, Defendant has failed to:

        a.    prepare a SWPPP for the Facility (violation of Sections 6 and 8.A.4 of the Stormwater Permit);

        b.    submit an NOI for the Facility (violation of Section 1.3.2 of the Stormwater Permit);

        c.    select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges (violation of Sections 2, 8.A.3 and 8.A.4 of the Stormwater Permit);

---

[2] *See* footnote 1.

d.      collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility, including quarterly benchmark monitoring for COD and TSS (violation of Sections 4.0, 8.A.6, and 8.A.7 of the Stormwater Permit);

e.      conduct and document routine Facility inspections and quarterly visual assessments to, among other things, sample and assess the quality of the Facility's stormwater discharges, ensure that stormwater control measures required by the permit are functioning correctly and are adequate to minimize pollutant discharges, and ensure timely corrective actions are taken when they are not (violation of Sections 3.0 and 8.A.5 of the Stormwater Permit);

f.      conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive stormwater pollution whenever required by the permit (violation of Section 5.0 of the Stormwater Permit); and

g.      timely prepare and submit to EPA all documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility inspections and visual assessments and the documentation of corrective actions (violation of Section 7 of the Stormwater Permit).

**FIRST CAUSE OF ACTION**
**Unpermitted Discharges of Industrial Stormwater:**
**Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)**

39.     The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

40.     Reliable Truss is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

41.     The Tributary Creek and Tributary Wetlands are "navigable waters" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

42.     Every day for the last five years that the defendant discharged industrial stormwater from the Facility into the Tributary Creek or Tributary Wetlands without a Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§ 1365(a)(1) and (f).

43.     These violations establish an ongoing pattern of failure to comply with the Stormwater Permit's requirements.

**SECOND CAUSE OF ACTION**
**Noncompliance with the Federal Stormwater Permit:**
**Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)**

44.     The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

45.     Reliable Truss has violated and continues to violate the Stormwater Permit by failing to implement its requirements, as set forth in paragraph 38, above.

46.     Reliable Truss' violations of each of the requirements set forth in paragraph 38, above, is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for

each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§ 1365(a)(1) and (f).

47.    These violations establish an ongoing pattern of violations with the Stormwater Permit's requirements.

## RELIEF REQUESTED

WHEREFORE, the Commonwealth respectfully requests that this Court grant the following relief:

48.    Require Reliable Truss to obtain coverage under and comply with EPA's federal Stormwater Permit;

49.    Order Reliable Truss to pay civil penalties of up to $64,618 per day for each of the Company's violations. *See* 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4; 88 Fed. Reg. 989 (Jan. 6, 2023);

50.    Order Reliable Truss to take appropriate actions to restore the quality of wetlands and waterways impaired by its unlawful activities;

51.    Award the Commonwealth's costs (including reasonable investigative, attorney witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

52.    Award any such other and further relief as this Court may deem appropriate.

Dated: March 15, 2023            Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS

By its attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

_____
Emily Mitchell Field (Bar No.703726)
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Tel: (617) 963-2207
Emily.Field@mass.gov

**ATTACHMENT A**

DAYS BETWEEN MARCH 1, 2018, AND MARCH 2, 2023 ON WHICH STORMWATER
FROM FACILITY DISCHARGED INTO WATERS OF THE UNITED STATES

| Year | Month | Date |
|------|-------|------|
| 2018 | March | 2, 7, 13 |
| | April | 3, 16, 25, 26, 27 |
| | May | 20 |
| | June | 4, 28 |
| | July | 6, 17 |
| 2019 | August | 4, 11, 12, 22 |
| | September | 10, 13, 18, 25, 28 |
| | October | 3, 11, 12, 23, 27 |
| | November | 3, 6, 9, 13, 15, 16, 25, 26 |
| | December | 2, 16, 21, 28, 30 |
| | January | 1, 5, 20, 24 |
| | February | 12, 13, 24 |
| | March | 4, 10, 22 |
| | April | 3, 8, 13, 20 |
| | May | 12 |
| | June | 11, 13, 20, 21, 25 |
| | July | 12, 18, 22, 23 |
| 2020 | August | 4, 28, 29 |
| | September | 12, 24 |
| | October | 16, 17, 23, 27 |
| | November | 5, 24 |
| | December | 1, 9, 11, 14, 17, 30 |
| | January | 25 |
| | February | 27 |
| | March | 19, 23, 29 |
| | April | 3, 9, 13, 18, 26 |
| | May | 1 |
| | June | 27, 29, 30 |
| | October | 13, 17, 29, 30 |
| 2021 | November | 1, 23, 26, 30 |
| | December | 5, 12, 17, 25 |
| | Month | Date |
| | January | 16, 26 |
| | February | 1, 7, 16, 22, 27 |
| | March | 1, 18, 28 |
| | April | 1, 15, 16, 25 |
| | May | 4, 10 |
| | June | 14 |

| Year | Month | Date |
|------|-------|------|
| 2021 | July | 1, 3, 9, 29 |
| 2022 | August | 4, 5, 22 |
| | September | 1, 2, 9, 16, 25, 26, 28 |
| | October | 4, 26, 30, 31 |
| | November | 12 |
| | January | 2, 5, 17, 29 |
| | February | 4, 18, 22, 25 |
| | March | 12, 24, 31 |
| | April | 8, 19, 26 |
| | June | 8, 9, 13, 17, 27 |
| | August | 9, 22, 31 |
| | September | 5, 6, 12, 13, 22 |
| 2023 | October | 1, 4, 5, 13, 14, 23, 26 |
| | November | 12, 13, 16, 27, 30 |
| | December | 3, 7, 16, 23, 31 |
| | January | 3, 4, 12, 13, 19, 23, 25, 26 |

EXHIBIT A – Page 2